UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OHIO

| | |
|---|---|
| **Ohio Justice and Policy Center**<br>*Plaintiff*,<br><br>*vs.*<br><br>**Annette Chambers Smith**, *et al.*,<br>*Defendants.* | Case No: 1:25-cv-291<br>Judge: Douglas R. Cole |

**PLAINTIFF'S REPLY IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION (Doc. 19)**

### I. INTRODUCTION

Plaintiff Ohio Justice and Policy Center ("OJPC") filed this action on May 6, 2025 to stop an ongoing threat to its ability to provide free legal services to people who are incarcerated in Ohio's state prisons in accordance with the Rules of Professional Conduct, which require attorneys to take reasonable care to protect their client's confidences. Prof. Cond.R. 1.6(c). Rather than cease the unconstitutional practice of copying legal mail, Defendants chose to expand the practice. Verified Amended and Supplemental Complaint, Doc. 23 (hereinafter "Complaint"), PAGEID#608 at ¶ 34.

OJPC's attorneys serve a very vulnerable population and do so with very limited resources. *Id.* at ¶23. For people who are incarcerated, the mail is a lifeline to the outside world. Legal mail is perhaps more sacred. The attorney-client relationship is the only relationship where an incarcerated person can experience any privacy. OJPC attorneys and their clients cannot work together without legal mail. It is imperative that this Court grant a preliminary injunction that

1

requires Defendants and their agents to cease implementation of the challenged Legal Mail Policy Variance. Defendants cannot defend this practice by pointing to another unconstitutional practice of "extensive" visual inspection of *each page* of legal mail. This Court should proceed to further proceedings on the merits pursuant to Fed. R. Civ. P. 65.

## II.     FACTS

### A. Plaintiffs Have Brought this Action to Protect the Rights of their Attorneys and Clients to Communicate Using the Mail in a Confidential Manner.

Eleven Ohio Department of Rehabilitation and Correction ("ODRC") facilities copy all incoming confidential legal mail. Complaint at ¶1. This entire process is lengthy and exposes confidential information to prison staff by its very nature. *Id.* at ¶2. When legal mail is copied and shredded, prison staff spend significant time looking at the paper in order to ensure it feeds into the copier correctly, to fix paper jams, check for double-siding, flipping through or fanning out pages, and looking at each individual page with the recipient to ensure the copy is correct. *Id.*

Plaintiff OJPC is a small, nonprofit law firm with limited resources. *Id.* at ¶23. OJPC provides free legal services to people living in prisons under the control of Defendants. *Id.* at ¶22. OJPC primarily uses confidential legal mail to communicate with its clients in prison. *Id.* ¶24. OJPC also uses confidential legal mail to communicate with potential clients. *Id.* at ¶26. Legal mail is indispensable to OJPC, and its attorneys cannot provide legal services without it. *Id.* at ¶119-123. OJPC has a small staff and receives a large volume of inquiries. *Id.* at ¶122. The alternative is to replace all legal mail with in-person visits. *Id.* at ¶121. Exclusively communicating with clients and potential clients via in-person visits is completely impractical and thus the Legal Mail Policy Variance forces OJPC attorneys to communicate in a non-confidential manner. *Id.* at ¶123. This is an untenable position for both OJPC attorneys and their incarcerated clients at the impacted institutions.  This Legal Mail Policy Variance harms OJPC's

attorneys and clients because it exposes the clients' confidential information to prison staff, and places OJPC attorneys in a position where they continuously violate their duties as attorneys by communicating in a non-confidential manner.

In response to Plaintiff's Motion for Preliminary Injunction, Defendants argue that the Legal Mail Policy Variance is less intrusive than the Original Legal Mail Policy because it requires less handling of the mail. Doc. 25, Mem. In. Opp. at PAGEID#723. In support of this contention, Defendants rely on the declaration of Fred Denny. Doc. 25-1. Mr. Denny is an investigator at the Southern Ohio Correctional Facility ("SOCF") and liases with the Ohio State Highway Patrol in investigating the conveyance of drugs into SOCF. *Id.* at ¶2-3. He states that drug abuse is prevalent at SOCF and other ODRC facilities but concedes that there have only been "isolated incidents" where legal mail was found to contain contraband. *Id.* at ¶4,17. He says only that illegal drugs have "attempted to be smuggled" in via legal mail but does not contend these attempts were made by actual attorneys, rather than someone attempting to impersonate an attorney. *Id.* at 17. In his declaration, Denny claims that prior to the implementation of copying legal mail, officers were putting legal mail through "rigorous inspection and scrutiny" by "visually inspecting each page" of all legal mail sent to people who reside at SOCF. *Id.* at ¶18. He also states that SOCF would perform an "extensive inspection" of the "ink" *Id.* at ¶32. *Visually inspecting each page violates ODRC's Original Legal Mail Policy.* If legal mail does not obviously contain contraband, "staff shall open the mail in the presence of the contraband and log receipt of the mail." ODRC Policy 75-MAL-03(VI)(A)(2)-(3). This practice is also not authorized by Ohio Admin. Code. §5120-9-17(B)(2).

**B. There is No Evidence that Legal Mail Has Caused the Introduction of Contraband Since 2023.**

Denny does not dispute the data put forth by Plaintiff that shows the last time contraband from legal mail was found outside the mailroom was in 2023. *See* Complaint Ex. F, Doc. 23-9. Additionally, the undisputed facts from data furnished to Plaintiff via public records request documenting every incident of contraband in legal mail between January 1, 2020, and April 4, 2025 show that the last time contraband was found in legal mail at SOCF was October 22, 2021, when one piece of K2 was found in an individual's housing unit/bed/cell. Ex. F, at PAGEID#692. Denny states, without factual or scientific support, that a single sheet of paper could cause "the entire incarcerated population at SOCF" to overdose. *Id.* at ¶7. But Defendants have not established that this extraordinary claim is based on any scientific evidence. Denny has no training in medicine or toxicology, nor does he cite to any outside authority to support his claim. This court may take judicial notice that approximately 1,310 people reside at SOCF. Corr. Inst. Inspection Comm., *Southern Ohio Correctional Facility 2024 Unannounced Inspection Report* (May 14, 2024), https://www.ciic.ohio.gov/ciic-api/public/files/ciic/a1484f0d-ee0b-4e5f-9f8f-9e4a0d7bced0/v1/Southern-Ohio-Correctional-Facility-2024-Unannounced-Inspection-Report.pdf. Even if one piece of paper theoretically could cause the entire population to overdose, there is no evidence this theoretical piece of paper would come from legal mail. Denny concedes that control numbers allow ODRC to verify that legal mail is legitimate and that ODRC has been able to "greatly reduce" the number of instances where paper soaked with illegal drugs has been smuggled into ODRC facilities. Denny Decl., Doc. 25-1, at ¶14-17. Thus, Denny justifies two unconstitutional practices—looking at each piece of legal mail, and copying legal mail—on the basis of a problem that simply is not attributable to legal mail.

### III. LAW AND ARGUMENT
#### A. A Preliminary Injunction is Warranted in this Matter.

In determining whether a preliminary injunction is warranted, courts must consider four factors: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether issuing the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction. *City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014). While, this is ordinarily a balancing test, when a party seeks preliminary injunctive relief based on a First Amendment violation, the likelihood of success is normally the determinative factor. *Jones v. Caruso*, 569 F.3d 258, 265-66 (6th Cir. 2009).

OJPC and its clients are likely to succeed on the merits of their First Amendment claim. OJPC and its clients have suffered and continue to suffer irreparable injury. Since Plaintiffs have shown that legal mail is a vanishingly small a minimal source of contraband, the Legal Mail Policy Variance is not reasonably related to a legitimate penological interest. Defendants, other incarcerated people, and prison staff will not be harmed by an injunction against the Legal Mail Policy Variance because it will not result in an increase in contraband. Finally, it is in the public interest to secure the First Amendment rights of OJPC and its clients, recognize the imperative of lawyer confidentiality, and preserve the attorney-client privilege, both bedrocks of the basic functioning of our legal system. This Court should grant a preliminary injunction preventing Defendants and their employees from enforcing the Legal Mail Policy Variance.

1.  **OJPC is Likely to Succeed on the Merits in this Action.**[1]

---

[1] OJPC does not allege in their Verified Amended and Supplemental Complaint that the Legal Mail Policy Variance impairs any sort of right protected by substantive due process or procedural due process, and so Plaintiff declines to address Defendants' arguments about such, at least on the terms stated by Defendants. When state officials violate someone's First Amendment rights, they naturally violate the due process clause of the Fourteenth Amendment, because the Clause incorporates the protections of the First Amendment against the states. Thus, a cause of action based on a state official's violation of the First Amendment may be brought also as a Fourteenth Amendment due process claim that is coextensive with the plaintiff's First Amendment claims. *See Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (citing *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748 (1976).

      a. **The Legal Mail Policy Variance is Invalid under *Turner, Sallier,* and its Progeny Which Require Courts to Review Prison Legal Mail Policies with "Heightened Concern."**

Both OJPC and its incarcerated clients have a First Amendment right to correspond via confidential legal mail, whether a legal matter is in its initial stages or has proceeded to litigation. *ACLU Fund of Mich. v. Livingston Cty.,* 796 F.3d 636, 643-644 (6th Cir. 2015). This right exists independently of any proffered alternatives for attorney-client communication, which OJPC has shown are insufficient methods of communicating with clients and potential clients. Complaint, Doc. 23, at ¶43-48.

    The "key issue" in determining what mail should be protected as "legal mail" is whether the attorney and client or potential client have an interest in maintaining confidentiality in communications regarding the matter. *ACLU Fund of Mich,* 796 F.3d at 644. Because the Legal Mail Policy Variance burdens the First Amendment rights of Plaintiff and its clients, the policy must be evaluated by whether it is "reasonably related to a legitimate penological interest." *Turner v. Safley*, 482 U.S. 78, 92 (1987). When the incoming mail is legal mail, "heightened concern" should be applied when a policy or practice gives prison officials "unfettered discretion" to open and read an incarcerated person's legal mail because "***a prison's security needs do not automatically trump*** a[n incarcerated person]'s First Amendment right to receive mail, especially correspondence that impacts upon or has import for the [incarcerated person's] legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (emphasis added). Although a "cursory" inspection to ensure the mail is bona fide legal mail is acceptable, inspection should be limited to ensuring the letter is in fact legal mail, <u>such as looking for an attorney's signature and letterhead.</u> *Bell-Bey v. Williams,* 87 F.3d 832, 837 (6th Cir. 1996) (quoting *Lemon v. Dugger*, 931 F.2d 1465, 1467 (11th Cir. 1991); *See also Jones v. Brown*, 461 F.3d 353, 362-3 (3d Cir. 2006) (prison policy that

6

allowed for opening confidential legal mail outside the presence of incarcerated individuals could not be justified in reference to generalized knowledge related to anthrax risk; it must be justified by showing a "significant risk of anthrax contamination and thus a reasonable connection between these practices and the safety and security of their prisons.")

Defendants thus cannot point to the mere possibility that contraband may be prevented from entering ODRC facilities via the Legal Mail Policy Variance. The Sixth Circuit has also recognized that requiring attorneys to identify themselves via their bar number and name would "drastically reduce" the likelihood of criminal and unethical acts by attorneys using legal mail.[2] *ACLU Fund of Mich.,* 796 F.3d at 647. When a prison policy cannot actually prevent the introduction of contraband because it "solves" a problem that has already been essentially eliminated, it cannot be sustained. *Id.* The Legal Mail Policy Variance therefore fails to meet the heightened protection standard under *Turner* and *Sallier*.

### i. The Process Described by Fred Denny Whereby Each Piece of Paper Included in Incoming Legal Mail is Inspected is Also Unconstitutional

Defendants oppose Plaintiff's Motion for Preliminary Injunction in part by admitting to unconstitutional conduct. SOCF Investigator Fred Denny writes that prior to the implementation of the Legal Mail Policy Variance, prison staff were subjecting *all* legal mail through "rigorous inspection and scrutiny" and visually inspecting "each page" of all legal documents. This practice is plainly unconstitutional. Moreover, this practice is not even authorized by ODRC Policy 75-MAL-03 or Ohio Admin Code 5120-9-17(B)(2). As discussed above, legal mail is granted heightened protection due to the many fundamental First Amendment rights at stake.

---

[2] In any event, conveyance of drugs into correctional facilities is a crime under Ohio Revised Code §2921.36, and criminal conduct that reflects adversely on a lawyer's ability to practice law is a disciplinary offense. Ohio R. Prof. Cond. 8.4(h). Defendants are free to report attorneys to the criminal legal and attorney disciplinary systems if an attorney were to ever convey contraband into their facilities.

*Sallier,* 343 F.3d at 877-78. Defendants cannot engage in conduct that gives prison staff "unfettered discretion" to read legal mail. *Id.* at 874. It belies belief for Denny to claim that prison officials would "rigorous[ly]" "visually inspect" each page of legal mail to determine if there were any "irregularities in the paper or ink", but at no point would any legal mail be read. Denny Decl., Doc. 25-1, at ¶18 The highly invasive practice described by Denny is not "reasonably related to a legitimate penological interest," and thus fails under *Turner,* for the same reasons the challenged Legal Mail Policy Variance fails. 482 U.S. at 89.  While the pre-variance legal mail policy is not objectionable, the practice of "extensive" "visual inspection" proffered by Defendants is unconstitutional. Plaintiff is not forced to choose between two unconstitutional practices simply because it provides legal services to human beings who are in prison and thus at the very margins of society.

> ii. **Defendants Have Already Implemented a Reasonably Available Alternative, Which OJPC Merely Asks that Defendants Return To.**

Where a party challenging a prison policy "can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Muhammad,* 35 F.3d at 1086 (quoting *Turner*, 482 U.S. at 91). Before the Legal Mail Policy Variance was implemented, Defendants implemented ODRC Policy 75-MAL-03 whereby legal mail was secured using a unique control number affixed to each legal mail envelope. In any event, the policy drastically reduced the misuse of legal mail to the point that since 2024, there have only been seven incidents (six in 2024 and only one in 2025) where contraband was detected in purported legal mail, and the contraband was detected in the mailroom every time. Complaint, Doc. 23, at ¶89-90. This is out of thousands of pieces of incoming legal mail that

8

arrive at ODRC facilities every month. *Id.* at ¶85. In other words, each month in 2024, between 2,812 and 3,739 pieces of incoming legal mail to ODRC facilities, but only six pieces contained contraband. *Id.* at ¶89. Of this very small fraction of incoming legal mail that contains contraband, it is almost always detected in the mail room. Considering the "prevalence" of drug abuse in ODRC facilities alleged by Denny, legal mail is, at most, a *de minimis* source of contraband. Using control numbers is enough to secure legal mail, and no further intrusion is warranted to ensure that contraband is not passed via legal mail. The Legal Mail Policy Variance, and the practice of individually scrutinizing each page of legal mail are both "exaggerated responses" that do not have a reasonable relationship to a legitimate penological interest. *See Turner,* 482 U.S. at 91.

Therefore, Plaintiffs have demonstrated a likelihood of success on the merits of their First Amendment claim.

### 2. OJPC and its Clients Have Suffered and Continue to Suffer Irreparable Harm

As discussed, OJPC and its clients have a standalone First Amendment right to communicate via confidential legal mail. *ACLU Fund of Mich.,* 796 F.3d at 644-645. When a constitutional violation is shown, the "irreparable harm" prong of the test for granting a preliminary injunction has been met. *Planned Parenthood Sw. Ohio Region v. Hodges,* 138 F. Supp. 3d 948, 960 (S.D. Ohio 2015). This is particularly true for a First Amendment violation— even "minimal infringement" is an irreparable injury. *Jones*, 569 F.3d at 277. Defendants argue that because OJPC has not "stopped sending legal communications to its incarcerated clients or vice versa", that it has not been harmed or prevented from communicating with its clients. or practicing their profession simply because it has not been "wholesale barred" from doing so. Mem. In Opp., Doc. 25, at PAGEID#740. One need not show that they have been totally barred from speech to be injured in the First Amendment sense. *Jones*, 569 F.3d at 277. Even so, the harm is

that OJPC *cannot* cease using legal mail due to its small staff and limited resources, and so it is forced to communicate in a non-confidential manner. Complaint at ¶4-5. Thus, it continuously breaks the attorney-client privilege. This is yet another irreparable harm. *Hadix v. Johnson*, 871 F.2d 1087 (6th Cir. 1989).

### 3. Granting the Requested Injunction Will Not Cause Substantial Harm to the People Who Live and Work in ODRC Facilities

In determining whether to grant a preliminary injunction, courts consider whether the requested relief would cause substantial harm to others. *City of Pontiac Retired Emples Assn*, 751 F.3d at 430. The data discussed above shows, and is not disputed by SOCF Investigator Denny, that legal mail is a *de minimis* source of contraband at best. Defendants cannot show that even one piece of paper laced with illegal drugs has made its way into the areas of the prison where people live, work, and congregate. Nor have they claimed any harm to any employee in the mail room where they do intercept the vanishingly small amount of contraband in legal mail. Thus, no harm would result to prison staff and incarcerated people should a preliminary injunction be granted.

### 4. The Public Interest Strongly Favors Protecting the First Amendment and the Attorney-Client Privilege

Defendants do not address the myriad of rights protected by the right to a confidential attorney client relationship, which in turn promote the broader public interests in the rule of law. *See Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). But that is precisely what is at stake in this action: two fundamental aspects of our legal system—the right to free speech, and the right to a confidential attorney-client relationship. When a First Amendment violation is shown, the violation itself is typically the determinative factor because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute." *Hamilton's Bogarts, Inc. v. Michigan,* 501 F.3d 644, 649 (6th Cir. 2007). The public interest is

10

always served by protecting the First Amendment. *Dayton Area Visually Impaired Persons v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Thus, the public interest is strongly in OJPC's favor, and it is entitled to preliminary injunctive relief.

### IV.    CONCLUSION

Plaintiff OJPC has shown that the circumstances demand preliminary injunctive relief to preserve the First Amendment rights of its attorneys and clients. This Court should grant a preliminary injunction prohibiting Defendants and their employees and agents from implementing the Legal Mail Policy Variance.

                                                              Respectfully Submitted,

                                                              **/s/Mark A. Vander Laan**
Mark A. Vander Laan (0013297)
Trial Attorney for Plaintiff
Angela S. Larsen (0105189)
Lizett M. Schreiber (0084708)
Attorney for Plaintiff
Ohio Justice and Policy Center
215 E. 9th Street, Suite 601
Cincinnati, Ohio 45202
(513) 421-1108
(513) 562-3200 (fax)
mvanderlaan@ohiojpc.org
alarsen@ohiojpc.org
lschreiber@ohiojpc.org
Dated: July 22, 2025

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2025, the foregoing was filed with the Court's electronic filing system and sent via email to Daniel.McKitrick@OhioAGO.gov.

/s/Mark A. Vander Laan
Mark A. Vander Laan (0013297)