Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax:  (216) 344-9395

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **OHIO JUSTICE AND POLICY CENTER,** | **CASE NO. 1:25-cv-291-DRC** |
| Plaintiff, | **JUDGE DOUGLAS R. COLE** |
| *vs.* | |
| **ANNETTE CHAMBERS SMITH, et al.,** | **BRIEF OF AMICUS CURIAE, CLEVELAND METROPOLITAN BAR ASSOCIATION** |
| Defendants. | |

**BRIEF**

## I.   INTRODUCTION

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. . . . The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998).

Chief Justice Rehnquist's words, writing for the almost unanimous Supreme Court, aptly set the stage for the dilemma at issue in this case. This lawsuit revolves around the violation of attorney-client privilege, but the underlying government policy also risks invasion of the required confidentiality of Certified Grievance Committees throughout the State of Ohio. Specifically, the Legal Mail Variance instituted by the Ohio Department of Rehabilitation and Corrections allows for staff members to open legal mail and make

copies. The policy variance claims that the copiers have no memory capability, but it makes no mention of the ability of the staff member making the copy to read what is being copied as they do it. Indeed, the policy appears to require staff to check on the substance of these communications if an incarcerated person disputes whether the copy is authentic, thus defeating confidentiality for its own purported sake. The privacy of communications sent to Certified Grievance Committees serves no less important "public ends" than the attorney-client privilege itself. *See Upjohn Co.*, 449 U.S. at 389 And neither of these venerable protections should be thrown out with the bathwater.

Meanwhile, the data provided by Plaintiff shows that while contraband is a problem, it cannot be fairly stated that legal mail is a meaningful culprit or provider of contraband. Whatever means may be appropriate to address the government's concerns, the policy at hand is too burdensome for justification. The Ohio Department of Rehabilitation and Correction's variance to their Legal Mail Policy should be enjoined, and this Court should enter such relief swiftly.

## II.   STATEMENT OF INTEREST OF AMICUS CURIAE

The Cleveland Metropolitan Bar Association ("CMBA"), founded in 1873, is a voluntary, non-profit professional organization that counts among its membership attorneys, judges, law students, paralegals, and other business professionals. At its founding, the CMBA's mission was to "maintain the honor and dignity of the Profession of the Law . . . and to provide legal and judicial reform." The CMBA operates a Certified Grievance Committee under the Supreme Court Rules for the Government of the Bar of Ohio. This Committee has existed since the founding of the CMBA. As part of the duties of a Certified Grievance Committee, persons may file complaints about attorneys that are then privately and confidentially investigated by the CMBA under Ohio Gov. Bar. R. V.

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

The CMBA operates as a collective voice of the bench and bar by upholding the highest standards of legal excellence, ethics, and professionalism. The membership of the CMBA therefore possesses a vested interest in the outcome of this lawsuit.

The CMBA submits this brief to provide the perspective of a local Ohio Bar Association on the ethical and rules violations occasioned by the variance to Ohio Department of Rehabilitation and Correction ("ODRC") Policy No. 75-MAL-03 ("Legal Mail Variance") that not only impacts the required confidentiality of grievances filed against attorneys but also attorney-client privilege. The obvious conflict, which ODRC appears to believe is not an issue, is that the Legal Mail Variance destroys both the confidentiality required by Supreme Court Rules for the Government of the Bar of Ohio ("Gov. Bar R.") V as well as the attorney-client privilege.

Amicus CMBA offers its expertise on this matter in the hope that this Court will ensure that the bedrock principle of the right to counsel is not shattered and issue a ruling that will also require that when an inmate files a grievance against their attorney, the confidentiality required within that adjudicatory process is maintained.

### III. STATEMENT OF FACTS

Amicus CMBA adopts and incorporates the Statement of Facts contained in Doc#:23, Plaintiff's Verified Amended and Supplemental Complaint for Declaratory and Injunctive Relief ("Am. Complaint"), PageID#:600.

### IV. ARGUMENT

#### A. The Legal Mail Variance results in systematic violations of Ohio Gov. Bar. R. V.

> No employee, appointee, or member of a certified grievance committee shall disclose to any person any proceedings, documents, or deliberations of the committee. Prior to taking office, bar counsel and each employee, appointee, or member

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

3

> of a certified grievance committee shall swear or affirm that he or she will abide by these rules.

*Ohio Gov. Bar R. V. Sec. 5(H)*.[1] With limited exceptions, "prior to a determination of probable cause by the Board, all proceedings, documents, and deliberations relating to review, investigation, and consideration of grievances shall be confidential[.]" *Ohio Gov. Bar R. V. Sec. 8(A)(1)*. How, then, may bar counsel communicate through the mail with those who initiate the grievance process without violating their solemn oath to avoid such a prohibited disclosure? How can a prisoner considering filing a grievance take action knowing that their efforts will result in a violation of the confidentiality that they too are obligated to maintain during the process? Under the ODRC Legal Mail Variance, there is no way to acknowledge the grievance and still properly consider and decide it, causing problems for all involved.

In the Complaint, Plaintiff alleges that there is at "least one incident where a prison official has read confidential legal mail since the Legal Mail Policy Variance has been in effect." *Doc#:23, Am. Complaint, PageID#:609*. Further, Plaintiff alleges that at least one gentleman has entered the mailroom and found that their legal mail had already been opened and copied outside of their presence, and on more than one occasion. *Id*.

The CMBA Certified Grievance Committee receives grievances against lawyers from incarcerated persons. A review of the CMBA's records reveals that since January 1, 2022, through August 5, 2025, at least 135 grievances have been filed by incarcerated persons. This figure does not include fee disputes—these are strictly complaints about potential misconduct by someone connected with the prisoner's case. To put that in

---

[1] A text-searchable, hyperlinked copy of these rules may be found online at: https://www.supremecourt.ohio.gov/laws-rules/ohio-rules-of-court/

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

context, the total number of grievances filed with the CMBA Certified Grievance Committee during the same period was 551, making grievances from prisoners 24.5% of the grievances received by the CMBA.

While there are many more, Amicus CMBA offers for illustrative purposes a limited sample of five specific grievances filed by prisoners that were predicated on issues with the Legal Mail. These examples are representative of the problems faced by the Legal Mail system put in place for ODRC:

> Prisoner A filed a grievance related to their inability to obtain correspondence from their lawyer.
>
> Prisoner B filed a grievance related, in pertinent part, to the lack of receipt of trial transcripts from counsel to aid in the filing of an appeal.
>
> Prisoner C filed a grievance related to their inability to receive information from their lawyer at their facility.
>
> Prisoner D filed a grievance related to their inability to receive briefs and transcripts from their lawyer while at their facility.
>
> Prisoner E filed a grievance related to their inability to obtain necessary parts of their case file from their lawyer in order to aid in Constitutionally protected attacks on their conviction.

When a prisoner files a grievance against a lawyer, a heavily regulated process begins. *See generally Gov. Bar R. V*. Within the CMBA, as part of that process, a copy of the lawyer's response to the grievance is sent on to the grievant, and as the grievance works through the process, updates are sent along too. Those updates include information that is considered to be confidential pursuant to Gov. Bar R. V.

Amicus CMBA respectfully submits that the Legal Mail Variance will, in every such case, result in a violation of Gov. Bar R. V as soon as such information is sent to prisoners and intercepted by ODRC.

Flowers & Grube
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

**B. ODRC's numerous and surreal excuses should be forcefully rejected.**

ODRC counters the Plaintiff's allegation that "by merely sending confidential legal mail to its clients, it 'break[s] the attorney-client privilege, and plac[es] their attorneys at risk of discipline'" by arguing it is "not supported by fact since OJPC never alleged that it has been sued for professional negligence or disciplinary complaint [sic.] has been filed against it or any of its attorneys." *Doc#:24, Motion to Dismiss, PageID#:707* (quoting *Doc#:23, Am. Complaint, PageID#:620*). However, as previously discussed, the CMBA Certified Grievance Committee has heard numerous disciplinary complaints related to legal mail filed with its office against attorneys who fall under its jurisdiction. Never mind, also, that a professional negligence claim may not be filed for a number of reasons other than the lack of a breach of confidentiality, like, for example, the obvious difficulty quantifying compensatory damages or apportioning them when ODRC policy primarily caused the breach.

ODRC further seeks to minimize the problems it has caused, contradicting even the plain text of its own policy:

> The variance to ODRC Policy No. 75-MAL-03 ("Legal Mail Variance"), in short, requires mailroom staff at ODRC correctional institutions to open legal mail in the presence of the intended incarcerated recipient, investigated [sic.] for contraband, copy the same using a copier with no memory capability that is connected only to electrical supply, and deliver a full and accurate copy of the legal mail to the incarcerated recipient before shredding the original legal mail. [Docs. 23-1, 23-2, and 23-3]."

*Doc#:24, Motion to Dismiss, PageID#:701-02*. ODRC's insistence that there is no memory capability on the copier should not satisfy this Court that there is no breach of confidentiality. The attorney-client privilege predates photocopiers, and presumably, it could have been violated without one at common law. However, the underlying false

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

premise of this claim is that nothing in the documents is read, inadvertently or maliciously, while a copy is made. The policy itself requires that ODRC staff ensure a complete and accurate copy is provided to the prisoner, which can only be done by reading the two documents to confirm they are the same.

Amicus CMBA also questions another frightening implication of the Legal Mail Variance—if no legal mail is supposed to be copied and retained, what does it mean that facilities have designated legal mail copiers without memory capabilities? This suggests that these facilities also utilize copiers with the ability to retain digital memory of legal mail. And in that context, the allegations of the complaint are frightening. What capacity to photocopy legal mail did "Oscar Smith, a staff member at MCI," possess when he read legal mail sent to a prisoner at his facility? *See Doc#:23, Am. Complaint, PageID#:609.* If legal mail sent to Mr. Dennis Pointer was "already opened and copied" when he arrived at the mailroom more than once, what prevented staff at his facility from scanning it to themselves by email, or worse, to a prosecutor, before showing it to him? *See Id.* After all, Pointer was not permitted to "witness the original being shredded," *id.*, and it would be fair to infer that something problematic had been done to his letter from that fact alone.

These exemplary facts are emblematic of a broader problem. Prisoners are not receiving their legal mail in general, and now ODRC has instituted a variance to a failed policy that annihilates its own original purpose. Truly, confidentiality cannot survive under any rule that permits ODRC to take possession of legal mail, open it, copy it, and then examine its contents for completeness if there is a dispute with a prisoner. The old rule, which was already burdensome for the attorneys who are required to communicate with their clients in prison, at least required ODRC to give legal mail to prisoners after confirming its sender and dispelling any suspicions of contraband. Given the minimal

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

failures of this less problematic system, the means of the Legal Mail Variance were not nearly justified by its ends.

In these ways the Legal Mail Variance destroys the confidentiality traditionally covering legal mail, resulting in violation of Gov. Bar R. V along the way. Amicus CMBA strongly urges the Court to issue proper injunctive relief barring utilization of the Legal Mail Variance and any similar policy. Anything short of that will pose significant risks for the employees of the CMBA, the lawyers being aggrieved, and potentially the prisoners in danger of discipline related to their inevitable violations of Gov. Bar R. V.

### C. The Legal Mail Variance violates attorney-client privilege and places lawyers in Ohio at risk of discipline.

The confidentiality of attorney-client communications rests at the bedrock of the legal system. *See Upjohn Co.,* 449 U.S. at 389; *Hunt v. Blackburn,* 128 U.S. 464, 470 (1888). The rule arises from the "necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt* at 470. This necessity belongs to the twelve wardens hailed before this Court no more or less than it does to the prisoners who have asked the Ohio Justice and Policy Center for help. And it is invaded no less by the Legal Mail Variance than it would be if the Ohio Justice and Policy Center issued a subpoena for communications between the Ohio Attorney General and the wardens. If the Plaintiff did, this Court would likely quash the subpoena whether or not the Ohio Justice and Policy Center promised not to read communications while opening and possessing them.

This case was brought by the Plaintiff pursuant to 42 U.S.C. §1983. *Doc#:23, Am. Complaint, PageID#:604.* In the context of an analogous Section 1983 claim premised

upon the Sixth Amendment, the United States District Court for the Eastern District of Michigan once explained:

> [I]nfringement on the right to counsel by surveillance of attorney-client conferences has a chilling effect on full and free communication. In *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (6th Cir. 1994), the Sixth Circuit noted that " '[i]t is well-settled that a chilling effect on one's constitutional constitutes a present injury in fact.'"

*Butler v. Pickell*, No. 1:21-cv-10817, 2022 WL 3337170, at *3 (E.D. Mich. May 11, 2022). Although not binding here, it is worth observing that the United States Court of Appeals for the Second Circuit once vacated a district court order that "did not appropriately consider the chilling effect that the cameras' presence in the attorney–client booths could have on pre-arraignment detainees' willingness to communicate candidly with their attorneys." *Grubbs v. O'Neill*, 744 F. App'x 20, 23 (2d Cir. 2018). In *Grubbs*, the Court of Appeals rejected the government defendant's excuse that it had "notices displayed in the attorney-client booths warning detainees that the cameras do not capture sound, record only visual information, operate for security purposes, and that detainees should remain seated in a demarcated area." *Id*. Such a "solution does not necessarily cure chilling concerns."

In the portions of the Complaint referenced in the previous section of this brief, the Plaintiff offered a number of allegations of staff conduct at ODRC facilities that would lead a prisoner to rationally limit the scope of their disclosures to counsel. *Doc#:23, Am. Complaint, PageID#:609*. ODRC's Motion to Dismiss claims that the Ohio Justice and Policy Center merely sent a "holiday newsletter," which it argues does not implicate a right of access to the courts. *Doc#:24, Motion to Dismiss, PageID#:719*. Yet that does not answer how or why a prison staff member knew what was included in the alleged

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

9

"newsletter" and whether it implicated the right of access to the courts. To the recipient of such a letter, who simply sees that the prison staff was willing to open an envelope from their attorney, the chilling implications are clear. Such a person would reasonably think twice before asking for frank advice from counsel or sending out mail with any meaningful disclosure of facts not already known to the imperious government. And for ODRC staff to believe that a piece of paper sent by counsel was not actually legal mail, that piece of paper had to be read, at least in part, prior to that determination. As such, the act of copying legal mail under ODRC's variance burdens and violates prisoners' attorney client privilege twice, whether by unmasking truly confidential statements or merely threatening to do so in the future.

Further, ODRC claims that "limited and isolated events of mail infringement do not rise to the level of a constitutional violation." *Doc#:24, Motion to Dismiss, PageID#:719*. To the contrary, the allegations made in this lawsuit, and Amicus CMBA's experience as a Certified Grievance Committee, both show that mail infringement is neither limited nor isolated. ODRC may have a custom of mail violations, which directly chills prisoners' right to counsel. Amicus CMBA submits that the entire legal profession is invested in the outcome of this case, in which this Court will decide whether it is legal, or appropriate, for a prison's employees to look at a prisoner's legal mail. If state law matters, it is clear:

> A lawyer shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by division (b) or required by division (d) of this rule.

*Ohio Prof. Cond. R. 1.6(a)*. The Legal Mail Variance, when compared with Ohio Prof.

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

Cond. R. 1.6(a), should give most attorneys pause. How can one send mail to their clients who are incarcerated when there is a non-zero risk that some prison employee might open and examine it? Amicus CMBA submits that this chills communications for prisoners and their counsel, and as such, the Legal Mail Variance should be enjoined.

## CONCLUSION

Amicus CMBA urges this Honorable Court to preliminarily and permanently enjoin the Legal Mail Variance consistent with the requests properly made by Plaintiff, Ohio Justice and Policy Center. Anything short of overturning the Legal Mail Variance puts attorneys in danger of discipline and violates attorney-client privilege.

Respectfully submitted,

*/s/ Louis Grube*

Louis E. Grube, Esq. (#0091337)
**FLOWERS & GRUBE**
Terminal Tower, 40th Floor
50 Public Square
Cleveland, Ohio  44113
(216) 344-9393
leg@pwfco.com

*Counsel for Amicus Curiae,*
*The Cleveland Metropolitan Bar*
*Association*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

11

**CERTIFICATE OF SERVICE**

  I certify that on September 30, 2025, the foregoing **Brief** was filed electronically. Service of this filing will be sent to all parties by operation of the court's electronic filing system. *S.D. Ohio Civ. R. 5.2(b)*. Parties may access this filing through the court's system.

            */s/ Louis Grube*
            Louis E. Grube, Esq. (#0091337)
            **FLOWERS & GRUBE**

            *Counsel for Amicus Curiae,*
            *The Cleveland Metropolitan Bar Association*

FLOWERS & GRUBE
Terminal Tower, 40th Floor
50 Public Sq.
Cleveland, Ohio 44113
(216) 344-9393
Fax: (216) 344-9395

12